IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-03728-PAB-CYC

WILLIAM MONTGOMERY,

Plaintiff,

v.

CHRIS WU, and
TANNER SPEHAR,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Believing that plaintiff William Montgomery's attempt to exit a Best Buy in Westminster while refusing to show them a receipt for his purchase evinced theft, employees of the store called the police. Defendants Chris Wu and Tanner Spehar, the responding police officers, move to dismiss plaintiff William Montgomery's complaint asserting Fourth Amendment violations in their arrest and searches of him and his property. ECF No. 22. While some of their conduct was arguably justified based on the circumstances of their encounter with the plaintiff and the information they received from store employees, they searched the plaintiff before receiving that information and detained him after they discovered that no theft had occurred. The Court therefore recommends **GRANTING** the motion in part and **DENYING** it in part**.**

## BACKGROUND

According to the complaint, whose factual allegations the Court accepts as true for this motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), on November 24, 2023, the plaintiff went to

a Best Buy store in Westminster, Colorado and purchased a Roku Express 4K+. ECF No. 1 ¶¶ 10–11. The store gave him a paper and electronic receipt but no plastic bag. *Id.* ¶ 11. Six minutes later, the plaintiff tried to leave the store holding the Roku in his hand. *Id.* ¶ 12.

A nearby store employee approached the plaintiff and asked to see his receipt. *Id.* The plaintiff replied, "I plead the fifth." *Id.* A store security guard then approached the plaintiff and again asked to see his receipt; the plaintiff again declined. *Id.* The plaintiff attempted to exit by walking around the guard, who blocked him from leaving the store several times. *Id.* The guard, joined by a companion, guided the plaintiff back into the store. *Id.* ¶ 13. Once inside, the plaintiff put the Roku inside his left jacket pocket. *Id.* A store employee informed the guard that the plaintiff had not paid for the Roku, and the guard called the police. *Id.* ¶ 15.

Ten minutes later, Wu arrived, and the guard left. *Id.* ¶ 16. The plaintiff seized upon this opportunity to try to leave the store again. *Id.* ¶ 17. Wu stopped him from doing so, directing the plaintiff to stop and put his hands behind his back. *Id.* The plaintiff complied. *Id.*

Spehar then joined Wu, and they performed a pat-down of the plaintiff. *Id.* ¶ 18. While doing so, Spehar removed the Roku from the plaintiff's jacket pocket without first patting down the pocket. *Id.* The officers attempted to ask the plaintiff about whether he had shoplifted but received only a response of "I plead the fifth" and subsequent silence. *Id.* ¶ 19. Spehar asked Wu if he had spoken with any store employees yet and received a negative answer. *Id.*

A store employee then approached and told Spehar that the plaintiff had "product he has not given back to us." *Id.* ¶ 20. Spehar asked if the store wanted to press charges, and the employee responded in the affirmative, noting that although they had given the plaintiff the opportunity to return the Roku, he was uncooperative. *Id.* The officers then escorted the plaintiff into a security office. *Id.*

In the security office, Spehar asked again whether the plaintiff had a receipt for the Roku but was met with silence. *Id.* ¶ 21. Wu removed the Roku from the plaintiff's pocket, and the defendants placed the plaintiff into handcuffs and searched him, finding his wallet, a cell phone, and a box of medication. *Id.* ¶ 22. After that, the officers brought the plaintiff outside and placed him in the back of a patrol car. *Id.*

Spehar and Wu split up. Spehar continued to try to elicit the plaintiff's side of the story without success. *Id.* ¶ 23. Wu investigated further, eventually viewing surveillance video showing the plaintiff paying for the Roku. *Id.* ¶ 30. Wu thereafter told store employees that "it looks like he paid for it" but because "he's playing games with us right now," Wu was going to "talk with [the plaintiff] a little bit more and find out if he's hiding a receipt someplace." *Id.*

Wu then went to the patrol vehicle where the plaintiff was being detained and asked him about his wallet. *Id.* ¶ 31. The plaintiff told Wu, "Yeah, that's my wallet. It has everything in it." *Id.* Wu then opened up the wallet and looked through it. *Id.* He then closed the patrol car's door, spoke with Spehar outside, reopened the door, told the plaintiff he was still being detained, and questioned him further. *Id.* ¶ 32. A short while thereafter, Wu released the plaintiff. *Id.* ¶ 33.

The plaintiff filed this lawsuit pro se on November 19, 2025, bringing four claims against the defendants in their individual capacities. *Id.* ¶¶ 5, 39–62. He asserts that a number of actions violated the Fourth Amendment: (1) the officers' initial pat-frisk, *id.* ¶¶ 39–42; (2) their arrest of him and continued detention of him following Wu's viewing of the surveillance video, *id.* ¶¶ 43–49; (3) the search of his person in the security office, *id.* ¶¶ 50–58; and (4) Wu's search of his wallet after viewing the surveillance video, *id.* ¶¶ 59–62.

This motion followed, and the district judge referred it to the undersigned. ECF No. 23.

**ANALYSIS**

The defendants move to dismiss the plaintiff's claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The standard for evaluating those arguments is oft-repeated and well-known. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Legal conclusions are not entitled to the assumption of truth, *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The ultimate duty of a reviewing court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

The defendants also assert entitlement to qualified immunity. ECF No. 17 at 2–8. Under that doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense, "the onus is on the plaintiff to

demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Surat v. Klamser*, 52 F.4th 1261, 1270–71 (10th Cir. 2022) (quotation marks omitted).

To pass scrutiny under the first prong on a Rule 12(b)(6) motion, "the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated [his] constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins*, 519 F.3d at 1249). "To qualify as clearly established, a constitutional right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Montgomery v. Cohn*, No. 23-1101, 2024 WL 1739290, at *2 (10th Cir. Apr. 23, 2024) (quotation marks omitted). A court scrutinizes the defendants' alleged conduct "for objective legal reasonableness." *Id.* (quoting *Doe v. Woodard*, 912 F.3d 1278, 1288 (10th Cir. 2019)). Courts find a right clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Id.* at *3 (quoting *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018)). "In the Fourth Amendment context, the result depends very much on the facts of each case, and the precedents must squarely govern the present case." *Id.* (quoting *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016)). "This high bar ensures qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Redmond*, 882 F.3d at 935).

Courts may address the prongs in any order, *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010), and a failure "to establish either prong of the two-pronged qualified-immunity standard" means "the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016).

Each one of the plaintiff's claims alleges a violation of the Fourth Amendment, which provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

## I. Claim 1: Initial Pat-Down Search and Reach into the Plaintiff's Pocket

Claim 1 asserts that the defendants' initial pat-down search of the plaintiff and Spehar's reaching into his pocket during that search to retrieve the Roku violated the Fourth Amendment. That amendment permits "an officer" to "conduct an investigatory stop, or '*Terry* stop,' if he 'has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.'" *United States v. Huerta*, 166 F.4th 866, 873 (10th Cir. 2025) (quoting *United States v. Samilton*, 56 F.4th 820, 827 (10th Cir. 2022)). "During a lawful stop, 'an officer may conduct a limited protective search ("frisk") if the officer harbors an articulable and reasonable suspicion that the person is armed and dangerous.'" *Id.* (quoting *United States v. Hammond*, 890 F.3d 901, 905 (10th Cir. 2018)). "Reasonable suspicion is 'based on the totality of the circumstances, taking into account an officer's reasonable inferences based on training, experience, and common sense.'" *Id.* (quoting *United States v. Garcia*, 751 F.3d 1139, 1143 (10th Cir. 2014)). The defendants had no such reasonable suspicion here.

According to the complaint, their knowledge at the time of the pat-down search was limited to having been called to the scene and observing the plaintiff try to walk away. Discovery may reveal they knew more. But that alone cannot have supplied reasonable suspicion that the plaintiff was armed and dangerous. After all, "[a] citizen has the constitutional right to walk away from a law enforcement officer who lacks probable cause or reasonable suspicion to detain or seize him or her." *Romero v. Story*, 672 F.3d 880, 889 (10th Cir. 2012) (citing *Kentucky v. King*, 563 U.S. 452, 470 (2011)). Nothing about the act of walking away alone conveys being armed or dangerous. And "clearly established law . . . requires that officers have reasonable,

articulable suspicion that a person is armed before the officers reach into his pockets." *Montgomery v. Cruz*, No. 20-cv-03189-PAB-MEH, 2022 WL 765877, at *5 (D. Colo. Mar. 14, 2022) (citing *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017)). The officers here had no such suspicion. Nor do they contend otherwise.

Moreover, the complaint alleges that Spehar reached into the plaintiff's jacket pocket without patting it down first, and "reach[ing] into Mr. Montgomery's pockets without patting them . . . would have constituted a clearly established violation of the Fourth Amendment." *Montgomery v. Cruz*, 162 F.4th 1285, 1291 (10th Cir. 2026). That constitutes an additional reason that this claim should survive.

The defendants do not address this body of law. Instead, they attempt to justify the pat-down as a search incident to arrest. Under the Fourth Amendment, "[a] police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (quotation marks omitted). Where the officer invokes qualified immunity, the "analysis turns on 'whether extant clearly established law [at the time of the events at issue] would have placed a reasonable, similarly situated police officer on notice that *no* probable cause existed for the warrantless arrest[ ]." *Cohn*, 2024 WL 1739290, at *3 (quoting *Quinn v. Young*, 780 F.3d 998, 1007 (10th Cir. 2015)). Thus, "the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." *Romero*, 45 F.3d at 1476 (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). Thus, even if the defendants "reasonably but mistakenly conclude[d] that

probable cause [was] present," they would be entitled to immunity. *Hunter*, 502 U.S. at 227 (quotation marks omitted).

When performing an arrest supported by probable cause, arresting officers may search "the arrestee's person, [and] the area within the arrestee's 'immediate control.'" *United States v. Knapp*, 917 F.3d 1161, 1165 (10th Cir. 2019) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). "This authority is justified by the need to disarm the suspect and preserve evidence," *id.* (citing *United States v. Robinso*n, 414 U.S. 218, 234 (1973)), and is the authority upon which the defendants rely.

But at the time of the pat-down, the plaintiff had not been arrested. It is true, as the defendants say, *see* ECF No. 22 at 9, that "[i]n order to be a legitimate 'search incident to arrest,' the search need not take place after the arrest." *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998). But the legitimacy of such a search depends on two conditions: "(1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search." *Id.* At the time, the defendants knew only that they had been called to the scene and that the plaintiff had attempted to walk away. Indeed, the complaint explicitly alleges that the officers had not spoken with store employees at that point. *See* ECF No. 1 ¶ 19. Nothing about such circumstances creates even arguable probable cause to arrest, as "[s]tanding alone, a suspect's attempt to walk away or flee from a police officer is generally not sufficient to create probable cause." *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995). Nor do the defendants make any argument to the contrary.

In sum, the initial pat-down search and reach into the plaintiff's pocket was not grounded in reasonable suspicion that the plaintiff was armed and dangerous or in arguable probable cause that he had committed a crime. They needed one of those bases to justify the search. At this

stage, the defendants are not entitled to qualified immunity, and the motion to dismiss Count 1 should be denied.

## II. Claims 2 and 3: Seizure of the Plaintiff's Person and Search Incident to Arrest

Claim 2's first assertion of an illegal seizure of the plaintiff's person relates to the defendants' initial arrest of the plaintiff. Claim 3 characterizes the search of his person thereafter as violative of the Fourth Amendment.

By the time the defendants handcuffed the plaintiff, they had more information than they did at the time of the pat-down. They knew: (1) the plaintiff had attempted to walk away when he was left alone with Wu; (2) a store employee had indicated that the plaintiff had an item that belonged to the store and had refused to return it; (3) the store employee indicated a desire to press charges; and (4) requests for information to the plaintiff about whether he had shoplifted were met with silence. ECF No. 1 ¶¶ 19–20. Such information suffices for arguable probable cause. In *Cohn*,

> there was arguable probable cause based on the following allegations in the complaint, including (1) dispatch was told that Walmart had detained a suspect for shoplifting; (2) Sergeant Cohn began an investigation as soon as he arrived on the scene; (3) during the investigation, Sergeant Cohn asked a Walmart employee whether Mr. Montgomery had a receipt and he was told that he did not; and (4) Mr. Montgomery refused to produce a receipt despite multiple requests to do so.

2024 WL 1739290, at *3. The defendants had a similar quantum of information here, supplying arguable probable cause entitling them to qualified immunity.

The plaintiff protests. He maintains that the defendants should have conducted a more in-depth investigation prior to handcuffing him. ECF No. 30 at 2–3. When, as here, the plaintiff proceeds pro se, a court must construe his complaint "liberally" and hold him "to a less stringent standard than formal pleadings drafted by lawyers," *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991)), though it "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

Even so construed, the cases on which the plaintiff relies are distinguishable. This case does not involve an arrest based solely on "a statement attributed to a barely-verbal two-year old child" that "was relayed by telephone to the officers, from the nurse, who heard it from the mother who ostensibly heard it from the two-year old." *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007). Understandably, a toddler's say-so conveyed through multiple individuals did not constitute "reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime." *Id*. This is also not a case where the defendants "fail[ed] to question" the suspect, *BeVier v. Hucal*, 806 F.2d 123, 127 (7th Cir. 1986); they simply learned nothing from doing so because the plaintiff refused to answer their questions.

Nor is this case like *Lusby v. T.G. & Y. Stores, Inc*., 749 F.2d 1423 (10th Cir. 1984), or *Baptiste v. J.C. Penney Co*., 147 F.3d 1252 (10th Cir. 1998). "In each of these cases, the arresting officer arrived on the scene after the alleged crime occurred and relied solely on accusations made by a party whose reliability had been called into doubt or would have been called into doubt if the officer had done any investigation, such as by interviewing the suspect." *Cohn*, 2024 WL 1739290, at *3; *see Montgomery v. Calvano*, No. 21-1134, 2022 WL 1132212, at *2 (10th Cir. Apr. 18, 2022). Thus, those cases "do not 'squarely govern the present case.'" *Cohn*, 2024 WL 1739290, at *3 (quoting *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016)). Unlike these cases, nothing called into doubt the store employee's account, including the defendants' attempts to interview the plaintiff.

The plaintiff has an additional shot in his sling. The defendants, he says, improperly characterize his attempt to walk away from Wu as flight. ECF No. 30 (citing *Cruz*, 2022 WL 765877, at *3). Regardless of the exact verbiage, though, such actions would still be "relevant to whether there was [probable cause] of shoplifting," combined with other information the defendants learned *Cruz*, 2022 WL 765877, at *3; *see Wadley*, 59 F.3d at 512 (noting that "in combination with other facts and circumstances, flight from an officer may create probable cause where the defendant persistently attempts to evade capture"). The attempt to walk away is properly part of the probable-cause analysis here.

Finally, the plaintiff says that a court cannot use his silence to find probable cause. ECF No. 30 at 6–7. After all, a person has the right to remain silent. *See* U.S. Const., amend. V. It is true that "a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick*, 501 U.S. 429, 437 (1991); *see Montgomery v. Lore*, No. 23-1106, 2023 WL 8613523, at *5 (10th Cir. Dec. 13, 2023). But here, there is more. And *Cohn* makes clear that the plaintiff's refusal to produce a receipt is properly considered, 2024 WL 1739290, at *3, as part of the "totality-of-the-circumstances approach" that governs the probable-cause inquiry. *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983).

In sum, the defendants had arguable probable cause to arrest the plaintiff for shoplifting. They are therefore entitled to qualified immunity on that portion of claim 2.

With such grounds to arrest the plaintiff, the defendants were thereafter permitted to search him incident to arrest. *See Knapp*, 917 F.3d at 1165; *United States v. Van Dam*, 37 F. App'x 461, 464 (10th Cir. 2002).

The plaintiff protests. He concedes that his encounter with the police bore "the hallmark[s] of an arrest, not a brief investigative detention." ECF No. 30 at 2. Nevertheless, he

says, because the defendants' failure to transport him to the police station undermines the rationales for a search incident to arrest. On his view, an arrest must include that step to anchor a search incident to arrest, making the search in this case unjustified. ECF No. 30 at 13–16.

The suggestion has little to commend it. The plaintiff has argued before "that because he was never transported to the police station and booked," the police "could not search him." *Cohn*, 2024 WL 1739290, at *4. But then, "it was not clearly established that a reasonable police officer would have understood that Mr. Montgomery *was not under arrest* when he was placed in handcuffs." *Id.* The same rationale still applies here.

The cases the plaintiff cites do not change the calculus. This is not, for instance, a case where the plaintiff was searched but not arrested. *Montgomery v. Cruz*, 162 F.4th 1285, 1289 (10th Cir. 2026). Nor is it one where a state statute labeled traffic-stop actions as an "arrest," diverging from the Fourth Amendment's categorizations. *See United States v. Gonzalez*, 763 F.2d 1127, 1130 n.1 (10th Cir. 1985). And unlike *Knowles v. Iowa*, 525 U.S. 113, 116–19 (1998), this case does not involve a traffic stop at all. To be clearly established law, "[w]hile there does not have to be a case that is factually identical, it must still be apparent to a reasonable officer in light of pre-existing law that his conduct was unlawful." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010). Cases about traffic stops do not guide an officer about whether handcuffing an individual and placing him in a patrol car can anchor a search incident to arrest.

Indeed, the very "notion of a 'non-custodial arrest'" that the plaintiff pitches here "is inconsistent with federal law, which recognizes only three levels of police-citizen interactions under the Fourth Amendment: consensual encounters, investigative detentions, and arrests." *Montgomery v. Gosselin*, No. 18-cv-02283-PAB-MEH, 2019 WL 4639950, at *3 (D. Colo. Sep. 23, 2019). It is true that *Robinson*, 414 U.S. at 234–35, cited an officer-safety rationale, including

safety en route to the police station, to justify searches incident to arrest. But that does not establish the concept of a "non-custodial arrest." In other words, neither "*Knowles* [n]or *Robinson* . . . set[] a bright-line rule that a stop (supported by probable cause to arrest) must actually culminate in a suspect's transportation for a custodial arrest, justifying a search, to be found." *United States v. Schwabland*, No. CR14-223RSL, 2015 WL 13333855, at *5 (W.D. Wash. Apr. 29, 2015), *aff'd*, 679 F. App'x 609 (9th Cir. 2017). "Such a finding would contradict post-*Robinson* statements from the Supreme Court concerning what it means to be arrested." *Id.* (citing *Illinois v. Lafayette*, 462 U.S. 640, 645 (1983)). The Court accordingly declines to make such a finding here.

The short of it is that "long-established Fourth Amendment doctrine provides that searches of persons incident to a lawful arrest are reasonable under the Fourth Amendment," *Frey v. Town of Jackson*, 41 F.4th 1223, 1243 (10th Cir. 2022), and the plaintiff points to no law clearly establishing that this case did not involve such a search. The defendants are therefore entitled to qualified immunity on claim 3.

## III. Claims 2 and 4: Continued Detention and Subsequent Search

Claim 2's second assertion of illegal detention relates to his continued detention after Wu watched the surveillance video. Claim 4 addresses Wu's search of the plaintiff's wallet at that time. These claims rest on more solid footing.

By that time, Wu had affirmative information that the plaintiff paid for the Roku, and "[t]he continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause." *Nieters v. Holtan*, 83 F.4th 1099, 1107–08 (8th Cir. 2023) (quoting *BeVier*, 806 F.2d at 128); *accord Lin v. District of Columbia*, 47 F.4th 828, 841 n.5 (D.C. Cir. 2022) (collecting cases); *see, e.g.*, *United States v. Dalton*, 918 F.3d 1117, 1128 (10th Cir. 2019) ("[P]robable cause becomes stale when new

information received by the police nullifies information critical to the earlier probable cause determination before the warrant is executed."). With probable cause vitiated, the defendants could no longer detain the plaintiff for theft.

The defendants do not contest the effect of the surveillance video on their authority to detain the plaintiff for theft. Instead, they contend that the video led to probable cause for a new offense: causing a false report to be made to the police. ECF No. 22 at 6–7.

Colorado criminalizes "mak[ing] a report or knowingly caus[ing] the transmission of a report to law enforcement authorities of a crime or other incident within their official concern when he or she knows that it did not occur." Colo. Rev. Stat. § 18-8-111(1)(a)(II). A Westminster ordinance punishes the same crime. Westminster Muni. Code § 6-5-7(A)(2). The plaintiff made no report to law enforcement, so the defendants argue that they had probable cause that he knowingly caused the transmission of a false report to the police.

To say that the plaintiff did so, though, stretches the idea of causation for this crime too far. The defendants provide no cases from Colorado or any other jurisdiction interpreting causation in this fashion, and the few cases in Colorado interpreting the concept emphasize that the provision of false information is what causes the transmission of a false report. *See, e.g.*, *Profita v. Puckett*, No. 15-cv-01237-DME-CBS, 2017 WL 1491003, at *14 (D. Colo. Apr. 25, 2017) (concluding that defendant did not violate Colo. Rev. Stat. § 18-8-111 because "[n]one of that information" he provided "was knowingly false"), *recommendation adopted*, 2017 WL 4225451 (D. Colo. June 6, 2017); *Anderson v. Senthilnathan*, 540 P.3d 1248, 1256 (Colo. App. 2023) (finding no "evidence conclusively establishing that BLM or Brooks-Fleming committed the crime of false reporting to authorities" because their "knowledge of the falsity of the sexual assault allegations is precisely the issue they . . . contest"). The plaintiff, of course, provided no

information at all, false or otherwise. He simply refused to answer store employees' questions about whether he had a receipt when exiting the store. Under the circumstances alleged in the complaint, it is difficult to say that a reasonable officer could believe he had probable cause that the plaintiff's conduct "knowingly cause[d]" the transmission of a false report to the police." Colo. Rev. Stat. § 18-8-111(1)(a)(II). The defendants are therefore not entitled to qualified immunity on Claim 2 insofar as it is premised upon the plaintiff's continued detention following Wu's viewing of the surveillance video.

For the same reason, the defendants are also not entitled to qualified immunity on Claim 4, which they justify as a search incident to arrest. ECF No. 22 at 9–10. Probable cause had dissipated by the time Wu searched the plaintiff's wallet and, as such, there was no lawful arrest authority upon which a search incident to arrest could be premised.

**IV. Dismissal with Prejudice**

Dismissal of a case is a harsh remedy, and a pro se litigant's pleadings are to be construed liberally. As a general rule, therefore, a court may give a pro se litigant the opportunity to amend the complaint to cure a pleading defect. *Hall*, 935 F.2d at 1109–10; *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). A court may, however, dismiss a complaint without an opportunity to amend if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Curly v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110). Here, the Court's recommendation to dismiss Claim 2 insofar as it is based upon the plaintiff's initial arrest and Claim 3 is not due to a pleading deficiency. Rather, as a matter of law, the defendants are entitled to qualified immunity for lack of clearly established law. No amendment would remedy that. Accordingly, those claims should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, the Court **RECOMMENDS**[1] that the defendants' Motion to Dismiss, ECF No. 22, be **GRANTED in part** with respect to Claim 2, insofar as it is based upon the plaintiff's initial arrest, and Claim 3, **DISMISSING** those claims **with prejudice.** The Court further **RECOMMENDS** that the motion be **DENIED in part** with respect to Claim 1; Claim 2, insofar as it is based upon the defendants' continued detention of the plaintiff following Wu's viewing of the surveillance video; and Claim 4.

Respectfully submitted this 17th day of August, 2026, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge

---

[1] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.