IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-03728-PAB-CYC

WILLIAM MONTGOMERY,

Plaintiff,

v.

CHRIS WU, and
TANNER SPEHAR,

Defendants.

---

**ORDER ACCEPTING RECOMMENDAITON OF MAGISTRATE JUDGE**

---

This matter comes before the Court on the Recommendation of United States Magistrate Judge [Docket No. 39]. Plaintiff and defendants filed objections. Docket Nos. 40, 43. The Court has jurisdiction pursuant to 28 U.S.C. §1331.

## I. FACTS[1]

On or about November 24, 2023 at approximately 10:52 a.m., plaintiff visited a Best Buy store in Westminster, Colorado. Docket No. at 1 at 3, ¶ 10. Plaintiff purchased a Roku Express 4K+ device. *Id.*, ¶ 11. As plaintiff began to leave the store with the Roku in hand, a Best Buy store employee asked to see his receipt, to which plaintiff responded, "I plead the fifth." *Id.* at 3-4, ¶ 12. A security guard heard plaintiff's response and also asked to see plaintiff's receipt. *Id.* Plaintiff declined to produce a

[1] The well-pleaded facts below are taken from the complaint, Docket No. 1, and are presumed to be true for purposes of ruling on defendants' motion to dismiss. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

receipt. *Id.* Plaintiff attempted to leave, but security guards prevented him from doing so. *Id.* at 3-4, ¶¶ 12-13. Plaintiff placed the Roku into his jacket pocket. *Id.* at 4, ¶ 13.

Plaintiff overhead a store employee inform one of the security guards that "he has not paid for" the Roku. *Id.* at 5, ¶ 15. Plaintiff watched the security guard call the police. *Id.*, ¶ 16. Ten minutes later, an officer with the Westminster Police Department, Officer Chris Wu, arrived on the scene and plaintiff again tried to leave the store. *Id.*, ¶¶ 16-17. Officer Wu told plaintiff to stop, turn around, and put his hands behind back. *Id.*, ¶ 17. Plaintiff complied. *Id.* Officer Wu told plaintiff that, after a second officer arrived on the scene, they would "go ahead and talk with the store to find out what's going on." *Id.*

A few moments later Westminster Police Officer Tanner Spehar arrived, and Officers Spehar and Wu performed a pat down of plaintiff. *Id.* at 5-6, ¶ 18. Officer Spehar removed the Roku from plaintiff's jacket pocket. *Id.* Officer Spehar did not pat down plaintiff's jacket pocket before removing the Roku from that pocket. *Id.* Plaintiff asked Officer Spehar to put the Roku back in his jacket pocket, and Officer Spehar complied. *Id.*

After the pat down, defendants asked plaintiff whether he had shoplifted from the store. *Id.* at 6, ¶ 19. Plaintiff responded by stating, "I plead the fifth" and thereafter remained silent. *Id.* Officer Spehar told plaintiff that they will "wait for [the employees], see what's going on, and watch some footage." *Id.* Officer Spehar asked if Officer Wu had spoken with any store employee yet, and Officer Wu said that he had not. *Id.*

A few moments later, a store employee approached defendants and informed Officer Spehar that plaintiff "has product he has not given back to us" while pointing to

the Roku in plaintiff's jacket pocket. *Id.*, ¶ 20. Officer Spehar asked if the employee wished to "press charges," and the employee responded, "Yes, we gave him the opportunity to give the product back, and he's just not [cooperating]." *Id.*

Defendants escorted plaintiff into a security office. *Id.* While inside the security office, Officer Spehar continued to ask plaintiff if he had a receipt for the Roku. *Id.*, ¶ 21. Plaintiff continued to remain silent. *Id.* A few moments later, Officer Wu removed the Roku from plaintiff's jacket pocket. *Id.* at 6-7, ¶ 22. Defendants placed plaintiff in handcuffs, searched plaintiff's pants pockets, and removed plaintiff's wallet, cell phone, and a box of Omeprazole. *Id.*

Officer Spehar escorted plaintiff outside and into the back of a patrol vehicle while Officer Wu stayed inside to speak with store employees. *Id.* Officer Spehar asked plaintiff for his side of the story. *Id.*, ¶ 23. Plaintiff responded by saying he did not like talking to people. *Id.* In the security office, Officer Wu spoke with a store employee who directed him to speak with the security guards. *Id.*, ¶ 24. One of the security guards told Officer Wu that "one of the ladies up here said, 'hey, that man did not pay for that item'" and eventually detained plaintiff inside the vestibule of the store. *Id.*, ¶ 25. Officer Wu asked the security guard if the store had any security footage. *Id.* The security guard said that he did not have access to the footage and directed Officer Wu to an employee who did have access. *Id.*

Officer Wu spoke with the store employee, asking if he could help him view the security footage. *Id.* at 7-8, ¶ 26. Officer Wu also asked to speak with the woman who saw plaintiff attempt to exit the store, at which point the security guard informed Officer Wu that a different male store employee was the one who informed the security guard

of the potential theft. *Id.* Officer Wu spoke with the store employee, who informed Officer Wu that he and a co-worker were standing near the exit and asked to see plaintiff's receipt but plaintiff had just kept walking. *Id.* at 8, ¶ 27. The store employee then flagged down the security guard. *Id.*

After 20 minutes, the store was able to locate video footage of plaintiff paying for the Roku. *Id.* at 9, ¶ 30. Upon viewing the footage, Officer Wu said to the employees, "Alright, so it looks like he paid for it. I don't know . . . where his receipt is, but . . . he's playing games with us right now." *Id.* Officer Wu told the employees that he was "gonna talk with [plaintiff] a little bit more and find out if he's hiding a receipt someplace in his, you know, pockets or something like that." *Id.*

Officer Wu went to the patrol vehicle and spoke with plaintiff. *Id.*, ¶ 31. Officer Wu asked plaintiff about his wallet, to which plaintiff responded, "Yeah, that's my wallet. It has everything in it." *Id.* Officer Wu immediately opened plaintiff's wallet and looked through it. *Id.* Officer Wu closed the patrol vehicle and went to speak with Officer Spehar. *Id.* at 10, ¶ 32.

A few moments later, defendants opened the door of the patrol vehicle and informed plaintiff that he was still being detained and further questioned him about whether he was willing to show a receipt for the Roku. *Id.* One of the officers stated, "You purchased this stuff, so why are we playing games and wasting everybody's time?" *Id.* Plaintiff replied, "If I don't show, I mean, burden of proof isn't on me, I mean, this is kind of a weird situation." *Id.* Shortly thereafter, Officer Wu asked plaintiff to step out of the patrol vehicle and informed him that Officer Spehar would be removing the handcuffs. *Id.*, ¶ 33. Officer Spehar removed the handcuffs and said that plaintiff was

free to go. *Id.* Plaintiff and defendants spoke for a few minutes, Officer Spehar returned plaintiff's property, and plaintiff left. *Id.*, ¶ 34.

Plaintiff filed this case on November 19, 2025, bringing Fourth Amendment claims pursuant to 42 U.S.C. § 1983 based on the following conduct: (1) the initial pat-down and search by Officer Spehar; (2) plaintiff's arrest and continued detention while Officer Wu viewed the surveillance video; (3) the search of plaintiff while he was in the security office; and (4) Officer Wu's search of plaintiff's wallet after viewing the surveillance footage. *Id* at 11-23.

## II. LEGAL STANDARD

### A. Objections to Magistrate Judge Recommendations

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id.*

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). The Court therefore reviews the non-objected to portions of the recommendation to confirm that there is "no clear error on the face of the record."

Fed. R. Civ. P. 72(b), Advisory Committee Notes. This standard of review is something less than a "clearly erroneous" or "contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b). Because plaintiff is proceeding pro se, the Court will construe his pleadings liberally without serving as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**B. <u>Motion to Dismiss</u>**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff still must provide "supporting factual averments" with his allegations. *Cory v. Allstate Insurance*, 584 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)). Otherwise, the Court need not accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### C. Qualified Immunity

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987). However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard. *Currier v. Doran,* 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)). When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.

## III. ANALYSIS

### A. Claim One – Initial Pat-Down Search

The recommendation finds that "the initial pat-down search and reach into plaintiff's pocket was not grounded in reasonable suspicion that plaintiff was armed and dangerous or in arguable probable cause that he had committed a crime." Docket No. 39 at 8. The magistrate judge recommends that defendants' motion to dismiss Claim One be denied because defendants are not entitled to qualified immunity. *Id.* at 8-9.

"[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007). In the Tenth Circuit, "in the context of a qualified immunity defense on an unlawful arrest claim, [courts] ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Corona v. Aguilar*, 959 F.3d. 1278, 1285 (10th Cir. 2020) (internal quotation marks, alterations, and citation omitted). "Arguable probable cause" is another way of saying that the officers' conclusions about whether probable cause existed rested on a reasonable but mistaken belief. *Cortez*, 478 F.3d at 1120–21. This same analysis applies in determining whether an officer had reasonable suspicion for a detention for purposes of qualified immunity. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1207 (10th Cir. 2008) ("In the context of a § 1983 action, moreover, the officer is entitled to qualified immunity if a reasonable officer could have believed that reasonable suspicion existed to detain the plaintiff – i.e., if the officer had arguable reasonable suspicion.") (alterations, internal quotations, and citation omitted).

Defendants object to the recommendation regarding Claim One, claiming that arguable probable cause supported plaintiff's arrest for theft and therefore the initial pat down and search of plaintiff's pockets was a valid search incident to arrest. *See* Docket No. 40 at 2-4. Defendants argue that the complaint's allegations "show Defendants . . . knew that Plaintiff had been accused of theft prior to the search." *Id.* at 2. Defendants cite Paragraph 40 in the complaint for support. *Id.* at 3. However, Paragraph 40 does

not support defendants' assertion that they knew plaintiff had been accused of theft prior to arriving on the scene:

> When Officer Spehar arrived on-scene, he began patting down Plaintiff, but did not perform an individual pat down of his front left jacket pocket, the one containing the Roku, prior to inserting his hands directly into it and removing the product from it. More importantly, Officer Spehar failed to perform any meaningful investigation whatsoever into the propriety of Plaintiff stealing from the store, in the first place, prior to conducting said pat down, as neither he, nor Officer Wu, had even spoken with any store personnel yet regarding what had actually prompted their particular call for service.

Docket No. 1 at 12, ¶ 40. In ruling on a Rule 12(b)(6) motion, the Court must "take [plaintiff's] well-pleaded facts as true, view them in the light most favorable to [plaintiff], and draw all reasonable inferences from the facts in favor of [plaintiff]." *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). In doing so, the Court finds that the complaint plausibly alleges that defendants did not know that plaintiff had been accused of theft and only knew that plaintiff had attempted to walk away.

Defendants also argue that they had arguable probable cause for the initial pat down and search of plaintiff because he had attempted to flee, relying on *D.C. v. Wesby*, 583 U.S. 48, 59 (2018). *See* Docket No. 40 at 3. *Wesby* held that "unprovoked flight upon noticing the police . . . is certainly suggestive of wrongdoing and can be treated as suspicious behavior that factors into the totality of the circumstances." 583 U.S. 48 at 59 (alteration, internal quotations, and citation omitted). At the point of the initial pat down and search, all defendants knew was that they were called to the store, presumably for some incident or crime, that plaintiff was the subject of interest, and that he tried to walk away from Officer Wu. There are no allegations that plaintiff attempted to "flee." "A citizen has the constitutional right to walk away from a law enforcement officer who lacks probable cause or reasonable suspicion to detain or seize him or her."

*Romero v. Story*, 672 F.3d 880, 889 (10th Cir. 2012). In light of *Romero* and *Wesby*, the Court finds that clearly established law did not support probable cause to arrest plaintiff and then search his pockets incident to arrest.

In any event, there are no allegations suggesting that defendants had arrested plaintiff based upon probable cause at that point. Rather, at the time of the pat down and search, defendants were detaining plaintiff based upon reasonable suspicion. But reasonable suspicion does not allow an officer to reach into a suspect's pocket. *Montgomery v. Cruz*, 162 F.4th 1285, 1288, 1290 (10th Cir. 2026), considered the issue of whether "the Fourth Amendment prohibited [the officer] from reaching into the pockets without patting them" during an investigative stop based upon reasonable suspicion. *Cruz* held that it was clearly established that, "[w]hen an officer stops someone to investigate, the officer must conduct a pat-down before reaching into the suspect's pockets." Here, the complaint alleges that Officer Spehar removed the Roku from plaintiff's pocket without patting that pocket down first. Docket No. 1 at 5, ¶ 18.

Accordingly, the Court finds that defendants are not entitled to qualified immunity on Claim One and will overrule defendants' objection. *See Cruz*, 162 F.4th at 1291 ("Based on the absence of a pat-down or an arrest, all officers should have understood that the Fourth Amendment would have prohibited a search of Mr. Montgomery's pockets.").

### B. <u>Claims Two and Four – Continued Detention After Viewing the Security Footage and Officer Wu's Search of Plaintiff's Wallet</u>

The recommendation finds that defendants are "not entitled to qualified immunity on Claim 2 insofar as it is premised upon the plaintiff's continued detention following Wu's viewing of the surveillance footage." Docket No. 39 at 15. The recommendation

finds that "defendants are also not entitled to qualified immunity on Claim 4" because "[p]robable cause had dissipated by the time Wu searched the plaintiff's wallet and, as such, there was no lawful arrest authority upon which a search incident to arrest could be premised." *Id.*

First, defendants argue that the magistrate judge, in finding that defendants violated clearly established law, erred by relying on cases that are not from the Tenth Circuit or Supreme Court, namely, *Profita v. Puckett*, No. 15-cv-01237-DME-CBS, 2017 WL 1491003, at *14 (D. Colo. Apr. 25, 2017), and *Anderson v. Senthilnathan*, 540 P.3d 1248, 1256 (Colo. App. 2023). *See* Docket No. 40 at 4. However, the magistrate judge was not relying on *Profita* and *Anderson* as clearly established law. Rather, the magistrate judge was relying on these cases to identify the elements of the offense of causing a false report to be made to the police. *See* Docket No. 39 at 14. Moreover, a court can rely on state law to interpret the state statute upon which an officer bases his probable cause determination. *See Kaufman v. Higgs*, 697 F.3d 1297, 1300-01 (10th Cir. 2012) ("[W]here the context is an alleged false arrest for a purported state offense, state law is of inevitable importance. The basic federal constitutional right of freedom from arrest without probable cause is undoubtedly clearly established by federal cases. But the precise scope of that right uniquely depends on the contours of a state's substantive criminal law in this case because the Defendants claim to have had probable cause based on a state criminal statute.") (citation omitted). Thus, the Court rejects defendants' argument.

Second, defendants argue that they had arguable probable cause to arrest plaintiff for causing a false report to be made to police as codified in Colo. Rev. Stat.

§ 18-8-111(1)(a)(II) and Westminster Muni. Code § 6-5-7(A)(2). *See* Docket No. 40 at 4-5. Colo. Rev. Stat. § 18-8-111(1)(a)(II) states that it is unlawful to "knowingly cause[] the transmission of a report to law enforcement authorities of a crime or other incident within their official concern when he or she knows that it did not occur." Westminster Muni. Code § 6-5-7(A)(2) criminalizes identical conduct. Defendants argue that a reasonable officer in Officer Wu's position could have believed that probable cause existed to arrest plaintiff under Colo. Rev. Stat. § 18-8-111(1)(a)(II) and Westminster Muni. Code § 6-5-7(A)(2) based on plaintiff's failure to produce a receipt and failure to deny the accusations or exculpate himself. Docket No. 40 at 5.

The Court finds that defendants violated clearly established law because no reasonable officer could have believed that reasonable suspicion existed to detain plaintiff for causing a false report. In *Mglej v. Gardner*, 974 F.3d 1151, 1164 (10th Cir. 2020), the court considered whether a police officer was entitled to qualified immunity for arresting the plaintiff for violating a Utah statute that criminalizes a person's failure to disclose identity if asked for it during a police stop. After analyzing the text of the statute, the court concluded that the officer did not have probable cause to arrest the plaintiff. *See id.* at 1161-62. Turning to the issue of whether the Fourth Amendment violation was clearly established, the court cited *Corona*, 959 F.3d at 1285, for the proposition that, in the context of unlawful arrest claims, a defendant is entitled to qualified immunity if he could have reasonably believed that probable cause existed in light of well-established law. *Id.* at 1164. The court concluded that, "based on the plain language" of the statute, the officer "could not have reasonably believed he had probable cause" to arrest the plaintiff. *Id.* Therefore, the court held that the defendant

was not entitled to qualified immunity. *Id*. Here, the plain language of the Colo. Rev. Stat. § 18-8-111(1)(a)(II) and Westminster Muni. Code § 6-5-7(A)(2), like the Utah statute in *Mglej*, is "unmistakably clear." *Id.* at 1165. Plaintiff must have reported false information or caused the transmission of a report containing false information. This did not happen. The recommendation is correct that "plaintiff, of course, provided no information at all, false or otherwise. He simply refused to answer store employees' questions about whether he had a receipt when exiting the store." Docket No. 39 at 14-15.

Accordingly, the Court finds that defendants are not entitled to qualified immunity on that portion of Claim Two concerning plaintiff's detention after Officer Wu viewed the security footage. Thus, defendants are also not entitled to qualified immunity on Claim Four, which concerns Officer Wu's search of plaintiff's wallet during this period of detention.

### C. <u>Claims Two and Three – Seizure of Plaintiff's Person and Search Incident to Arrest</u>

The recommendation finds that defendants are entitled to qualified immunity on that portion of Claim Two that concerns the arrest of plaintiff in the security office when he was handcuffed, as well as Claim Three, which concerns the search of plaintiff after his arrest. *See id.* at 11. The recommendation finds that, at that time, "defendants had arguable probable cause to arrest plaintiff for shoplifting" and that, "[w]ith such grounds to arrest the plaintiff, the defendants were thereafter permitted to search him incident to arrest." *Id.* The recommendation relies on *Montgomery v. Cohn*, 2024 WL 1739290 (10th Cir. Apr. 23, 2024). *Id.* at 9. In *Cohn*, the Tenth Circuit held:

> there was arguable probable cause based on the following allegations in the complaint, including (1) dispatch was told that Walmart had detained a suspect for shoplifting; (2) Sergeant Cohn began an investigation as soon as he arrived on the scene; (3) during the investigation, Sergeant Cohn asked a Walmart employee whether Mr. Montgomery had a receipt and he was told that he did not; and (4) Mr. Montgomery refused to produce a receipt despite multiple requests to do so.

2024 WL 1739290, at *3. The recommendation finds that "defendants had a similar quantum of information here, supplying arguable probable cause entitling them to qualified immunity." Docket No. 39 at 9. Specifically, the recommendation finds that defendants had the following information by the time they handcuffed plaintiff:

> (1) the plaintiff had attempted to walk away when he was left alone with Wu; (2) a store employee had indicated that the plaintiff had an item that belonged to the store and had refused to return it; (3) the store employee indicated a desire to press charges; and (4) requests for information to the plaintiff about whether he had shoplifted were met with silence.

*Id.*

The Court agrees that *Cohn* establishes that defendants had arguable probable cause to arrest plaintiff for shoplifting at that point. As in *Cohn*, a store employee told defendants that plaintiff had store merchandise that he had not paid for, pointing to the Roku that was in plaintiff's jacket pocket. Docket No. 1 at 6, ¶ 20. Defendants asked plaintiff whether he had a receipt and whether the merchandise was stolen, to which they did not receive an answer. *Id.*, ¶ 19. Plaintiff objects to this part of the recommendation, arguing that *Cohn* is distinguishable and that the officers failed to examine readily accessible evidence before the arrest. *See* Docket No. 43 at 3-10.

Plaintiff attempts to distinguish *Cohn* on the basis that defendants did not know, upon arriving at the scene, that plaintiff was a shoplifting suspect and that he had refused to produce a receipt. *See id.* at 8-9, ¶ 20. As discussed above, it is true that

defendants did not know that plaintiff was suspected of shoplifting or that he had refused to produce a receipt at the time of the initial pat down and search. However, the relevant point in time for purposes of this analysis is the time of plaintiff's arrest (i.e., when he was handcuffed in the security office). By that point, a store employee had told defendants that plaintiff was suspected of shoplifting the Roku and defendants could not get an answer from plaintiff regarding whether he had a receipt.

Although plaintiff fails to distinguish *Cohn*, he argues that *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252 (10th Cir. 1998), and *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984), *judgment vacated sub nom. City of Lawton, Okla. v. Lusby*, 474 U.S. 805 (1985), supply clearly established law that defendants lacked probable cause to arrest him. *See* Docket No. 43 at 12-14. The Court agrees with the recommendation and *Cohn* that these cases are distinguishable. As held in *Cohn*,

> Mr. Montgomery's reliance on *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252 (10th Cir. 1998), and *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984), *vacated sub nom. City of Lawton v. Lusby*, 474 U.S. 805 (1985), *aff'd on reconsideration*, 796 F.2d 1307 (10th Cir. 1986) is misplaced. In each of these cases, the arresting officer arrived on the scene after the alleged crime occurred and relied solely on accusations made by a party whose reliability had been called into doubt or would have been called into doubt if the officer had done any investigation, such as by interviewing the suspect. *See Baptiste*, 147 F.3d at 1257 (concluding that the officers lacked reasonable grounds "to believe the shoplifting allegations made by store security guards in light of the conduct recorded on [a] videotape; [the suspect's] explanation; her production of receipts[;] ... and the search of her bag, purse, and pockets, which revealed no stolen merchandise"); *Lusby*, 749 F.2d at 1430 (noting the arresting officers arrived on the scene, "picked up the [suspects], handcuffed and frisked them and took them to jail without interviewing witnesses or conducting any inquiry to determine whether probable cause existed to arrest them"). These cases do not "squarely govern the present case," [*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016)] (internal quotation marks omitted).

2024 WL 1739290, at *3. Here, there was nothing that called into doubt the reliability of the employee's accusation of plaintiff. Instead, the employee's accusation was

supported by him pointing out the merchandise in question and plaintiff's refusal to produce a receipt.

Plaintiff also argues that it was clearly established that the officers had an obligation to view the store security video before they could lawfully arrest him. Docket No. 43 at 3-6. In support of this argument, he relies upon *Baptiste*, 147 F.3d at 1257 n.8, which noted that, "[a]bsent exceptional circumstances, . . . when a videotape of the conduct at issue is both known and readily accessible to an officer investigating an alleged crime, the officer must view the videotape so as to avoid improperly delegating the officer's duty to determine probable cause." *Id.* at 4-5, ¶ 10. Plaintiff claims that the store's security video was easily accessible and that defendants knew that the video existed but did not watch it. *See id.* Plaintiff's reliance on *Baptiste* is unpersuasive, especially as a source of clearly established law. *See Craft v. White*, 840 F. App'x 372, 375-76 (10th Cir. 2021) (unpublished) (labeling *Baptiste's* comment that an officer "must view the videotape" as dictum); *see also Alberty v. Hunter*, 144 F.4th 408, 417 n.2 (2d Cir. 2025) (noting that Tenth Circuit in *Craft* characterized the language in *Baptiste* as dictum and stating that "we have never adopted a rule that officers must watch a video known to them before arresting a suspect. *See Walston v. City of New York*, 289 F. Supp. 3d 398, 414 (E.D.N.Y. 2018), *aff'd,* 754 F. App'x 65 (2d Cir. 2019) (unpublished) ("[C]ourts in this Circuit have expressly held that police do not have to review surveillance video in order to establish probable cause.")").

Moreover, the Court finds that the circumstances here are distinguishable from *Baptiste*. There are no allegations in the complaint that the officers could have "readily" watched the surveillance video. Rather, Officer Wu asked the security guard for

security footage, but the security guard did not have access to the video. Docket No. 1 at 7, ¶ 25. The security guard had to identify the employee who had access to the footage. *Id.* The only footage initially identified was footage of plaintiff leaving the store. *Id.* at 8, ¶ 28. Officer Wu had to ask the employee to "work backwards" to "track [plaintiff's] progress through the store." *Id.* It took the employee 20 minutes to review the footage and identify the point at which plaintiff paid for the Roku. *Id.* at 9, ¶ 30.

The Court finds that the complaint, viewed in a light most favorable to plaintiff, does not allege that the store security video was "readily accessible" to the officers. In fact, the allegations show that the exculpatory portion of the store security video was not "readily" accessible to even the store personnel since it took them time to review the video and determine that plaintiff in fact paid for the Roku.

Because defendants had arguable probable cause to arrest plaintiff for shoplifting, defendants are entitled to qualified immunity on that portion of Claim Two that concerns plaintiff's arrest for shoplifting.

Claim Three is premised on the search of plaintiff following his arrest for shoplifting. *See* Docket No. 1 at 16-23. Because plaintiff's arrest was supported by arguable probable cause, the Court agrees that the search of plaintiff was a valid search incident to arrest. *See Cohn,* 2024 WL 1739290, at *4 (concluding that there was a valid search incident to arrest after finding that there was arguable probable cause for plaintiff's arrest); *Garcia v. Davis*, 2016 WL 9777236, at *16 (D.N.M. June 3, 2016) ("Defendants had arguable probable cause to arrest Plaintiff; therefore, the search of Plaintiff's person incident to the arrest was lawful."); *Metz v. Bridges*, 2024 WL 5088586, at *5 (11th Cir. Dec. 12, 2024) ("it was reasonable for an officer in Officer Dodson's

position to believe that Metz was arrested, and that Officer Dodson could therefore conduct a search incident to arrest").

Plaintiff objects to the recommendation on this issue, arguing that *Knowles v. Iowa*, 525 U.S. 113 (1998), supplies clearly established law that defendants could not conduct a full-blown search incident to arrest. Docket No. 43 at 16-17. As held in *Cohn*, "*Knowles* is inapposite because Mr. Montgomery was placed under arrest before he was searched" as there was at least arguable probable cause to support plaintiff's arrest. *See* 2024 WL 1739290, at *4. Specifically, plaintiff was escorted to security office, handcuffed, and placed in a patrol car while Officer Wu viewed the security footage. Docket No. 1 at 6-7, ¶¶ 20-22.

Accordingly, defendants are entitled to qualified immunity on Claim Three, which concerns the search of plaintiff before Officer Wu viewed the security footage exculpating plaintiff.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 39] is **ACCEPTED**. It is further

**ORDERED** that Defendants' Objections to the Recommendation [Docket No. 40] are **OVERRULED**. It is further

**ORDERED** that Plaintiff's Objection to the Magistrate Judge's Report & Recommendations [Docket No. 43] is **OVERRULED**. It is further

**ORDERED** that defendants' Motion to Dismiss [Docket No. 22] is **GRANTED in part and DENIED in part**. It is further

**ORDERED** that the portion of Claim Two that concerns plaintiff's initial arrest is **DISMISSED with prejudice**. It is further

**ORDERED** that Claim Three is **DISMISSED with prejudice**.[2]

DATED September 29, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

[2] Plaintiff does not object to the magistrate judge's recommendation that the claims for which defendants are entitled to qualified immunity be dismissed with prejudice. *See* Docket No. 39 at 15. The Court agrees that, because defendants are "entitled to qualified immunity for lack of clearly established law[,] [n]o amendment would remedy that" and dismissal with prejudice is proper. *See id.*; *see also Clark v. Wilson,* 625 F.3d 686, 692 (10th Cir. 2010) (instructing the district court to grant defendants' motion to dismiss based on qualified immunity "with prejudice"); *McCrary v. Jones*, 2015 WL 873641, at *6 (W.D. Okla. Feb. 27, 2015) (dismissing claim with prejudice where defendant was entitled to qualified immunity).